[Civil No. 3037. Filed September 17, 1931.]

[2 Pac. (2d) 1039.]

In the Matter of the Disbarment of E. A. LOHRKE, an Attorney of This Court.

Mr. K. Berry Peterson, Attorney General, and Mr. Riney B. Salmon, Assistant Attorney General, for the State.

Mr. E. A. Lohrke, *in pro. per.*

ROSS, J.—This is an original proceeding to disbar E. A. Lohrke, an attorney of this court, brought on October 31, 1930, by the Attorney General upon the recommendation of a grievance committee of the State Bar Association.

The respondent filed an answer to the accusations. Thereafter the court appointed Wallace W. Clark, Esquire, a member of the bar, located in Phoenix, Maricopa county, as referee to take and report the testimony. Although respondent was notified of the time and place of taking the testimony, he was not present and was not represented by counsel. The referee, at the appointed time and place, took the testimony of the witnesses in behalf of the relator and on January 21, 1931, filed the same in this court. The case has been submitted upon the record and the written briefs, the respondent's brief being written by himself.

The records and files of the office of the clerk of this court show that respondent took the oath required by law and signed the roll of attorneys on January 13, 1930; that he did not at that time or at all pay to the clerk "a further fee of ten dollars" as provided in section 198 of the Revised Code of 1928; and that he did not then or at all or ever receive from the clerk a license authorizing him to practice as an attorney and counselor at law in the courts of this state. We mention this dereliction on his part because it is in line with his general course of conduct throughout his short career as a lawyer.

Some time in December, 1929, and before respondent had taken his oath as attorney, he, according to the evidence, accepted employment from one Oscar Dahlgren to organize a corporation to be known as the Copper State Sanatorium Corporation. In addition to acting as attorney in this matter, he proposed to secure finances to promote the corporation, was

elected secretary, got possession of a stock certificate, signed by the president, for five shares of the par value of $500, and sold the certificate for $100, which sum he converted. This sum was not made good to the corporation or any of its officers.

He issued checks on the First National Bank of Arizona as follows: On February 8, 1930, one to C. A. Summers for $50; February 17th, one for $7.50 to Bert Friedman; February 21st, one for $7.50 to Bert Friedman; March 4th, one to Hammond Grocery for $7.50; March 17th, one to Curtis Motors for $15; and March 29th, one to C. A. Jones for $2.10. At the time of issuing said checks he had no account and had had no account in the said First National Bank of Arizona.

On July 7, 1930, he was in Tucson, Arizona, on some business, and while there was introduced by another member of the bar to Clarence Houston, deputy county attorney of Pima county. This was about 10 o'clock in the morning. He re-appeared in Housston's office about 3 o'clock in the afternoon and asked the latter if he would cash his check on the Valley Bank, of Phoenix, for $10. Houston, not having the cash, offered to help him get the $10 and went with him to the county treasurer, who cashed the check after Houston had indorsed it. The check was returned unpaid for want of funds. Houston made the check good to the county treasurer. He then tried to get respondent to repay him, but his letters and communications were all ignored. In his verified answer filed herein respondent falsely states that ''the accused arranged for and paid said check,'' thus adding false swearing to his other crime of drawing a check on insufficient account. Section 4789, Revised Code of 1928.

On March 31, 1930, he went to his brother lawyer, E. O. Phlegar, stated he had overdrawn his checking account $30, and asked Phlegar to indorse a draft on

his (respondent's) brother, residing in one of the northeastern states, for $50. This Phlegar refused to do, but did consent to sign respondent's note for $50 to the Collateral Finance Corporation, upon the condition that the respondent immediately draw his draft against his brother for $100 and turn it over to Phlegar for collection, with the understanding that when collected Phlegar would pay the note and interest and give the balance to respondent. The latter, having gotten Phlegar's signature to the note and having been paid the $50 by the Finance Corporation, refused to draw and deliver to Phlegar the draft against his brother. Phlegar paid the note and has not been reimbursed by respondent.

August 12, 1930, respondent was employed by one R. J. R. Martin to obtain a divorce for him. Martin had not at the time been a *bona fide* resident of Arizona for one year. He advised Martin he could file his action at once and by the time of trial the year's residence would be up. Martin paid him $15.30 and took a receipt therefor which recites respondent guaranteed to procure the divorce or refund the money. Respondent never even filed a complaint for Martin and would not return the money advanced, or any part thereof.

There is in the transcript of testimony absolute proof of other delinquencies, but we do not state them. Enough has been recited to demonstrate the respondent's unfitness to have a license to practice law.

One of the grounds of disbarment enumerated in section 201 of the Revised Code of 1928 is "any violation of the oath taken by him or of his duties as an attorney." Respondent in his oath of office swore that he would support the laws of the state and that he would conduct himself with all good fidelity to his clients. His conduct shows a complete disregard of the laws he swore to sustain and uphold and a flagrant unfaithfulness to his clients. His conduct is so

at variance with the high standards set by the profession that one cannot account therefor except upon the theory that he somehow conceived the idea that a license to practice law was a license to plunder his fellows and generally to do as he pleased.

This record shows respondent guilty of seeking and accepting professional business before he had taken the oath required of him. It shows him in that same piece of business guilty of converting to his own use the money of his employer, or the corporation he helped to organize. It shows him recklessly issuing checks on banks in which he had no account. It shows him, under the cloak of his profession, imposing upon and defrauding fellow members of the bar and, finally, it shows him committing perjury in this proceeding by swearing he had repaid Clarence Houston when in fact he had not.

As is said in *Re Stolen,* 193 Wis. 602, 55 A. L. R. 1355, 214 N. W. 379, 216 N. W. 127:

"He betrays a weakness of character which renders it extremely dangerous to continue him in positions of trust calling for honesty, fidelity, and integrity."

It is the judgment of the court that E. A. Lohrke be, and he hereby is, disbarred from practicing law in this state, and his name is hereby stricken from the roll of attorneys of this court.

McALISTER, C. J., and LOCKWOOD, J., concur.